**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32070**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Opinion No. 30 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 29, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBROY WALL, JR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Darla S. Williamson, District Judge.

Judgment of conviction for first degree murder, <u>affirmed</u>.

Greg S. Silvey, Kuna, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent.

---

WALTERS, Judge Pro Tem

This is an appeal from a judgment of conviction for first degree murder.  The appellant, Robroy Wall, Jr., contends that the district court committed reversible error by providing a substitute verdict form and accompanying instruction to the jury after the jury had begun its deliberations.  We affirm.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

The following background appears in the record.  In May 2003, Zachariah Street was found dead in the desert south of Boise, in Ada County, Idaho.  The death was caused by gunshot wounds to Street's head.  The State charged Robroy Wall, Jr., Jason McDermott and Daniel Hosford with first degree murder and with conspiracy to commit first degree murder, and sought sentence enhancements for use of a firearm in the commission of a felony in regard to Street's death.

1

Daniel Hosford pled guilty to aiding and abetting second degree murder and testified at Wall's trial. He disclosed that he, McDermott, Wall, and Street were all members of the "La Familia" gang and that McDermott was in charge of the gang while Wall was second in command. Hosford testified that McDermott believed that Street had "ratted" on members of the gang, including McDermott, when Street and another gang member were arrested on April 4, 2003, for vehicle burglary. McDermott was angry at Street for having named names, and McDermott discussed with Hosford and Wall what to do to Street, including shooting him.

After dark and during the early morning hours of May 2, 2003, the four of them drove to the desert. McDermott told Street to take off his hat, shirt, pants, and shoes. Street reluctantly undressed after Hosford told him that it was a "test." McDermott then told Street to get down on his knees with his hands behind his back. McDermott placed a shirt over Street's head after Wall suggested that they do so to avoid blood spatter. McDermott then cocked the gun and told Street he knew that Street had ratted him out. McDermott asked Street if he was scared, to which he first answered that he was not, but when McDermott became angry at this response, Street said that he was a little bit scared. McDermott began tracing the gun around Street's head. When he reached the area near Street's temple, McDermott said he was looking for a certain spot, and when he had placed the gun next to Street's left temple, said "it's right there" and pulled the trigger. Street fell forward, still alive but unconscious. Wall then took the gun. McDermott mentioned the possibility of blood spatter, so Wall put Street's pants over Street's head. Wall bent over Street, said "Where do you want it, brother?" and shot Street a second time in the head. After he shot Street, Wall began jumping up and down, as if he was happy, and handed the gun to McDermott. Wall and McDermott embraced each other as if giving a hug and kissed each other on the cheek. Wall hugged Hosford, kissed him on his cheek, and told Hosford that if he told anyone, Wall would kill him.

Hosford was arrested the next day and, after initially telling the police an alibi story, later confessed that he, McDermott, and Wall had been involved in the murder. Wall was charged with conspiracy to commit first degree murder and with first degree murder (both as an aider and abettor and as a direct participant), and a sentence enhancement was sought for using a firearm in the commission of a crime.

The State filed a notice of intent to seek the death penalty against McDermott and Wall. The co-defendants' trials were severed and McDermott was tried first. At McDermott's trial, the

2

jury did not reach a unanimous decision on the statutory circumstances that would have triggered the death penalty as to McDermott. After this, the State withdrew its notice of intent to seek the death penalty as to Wall.

Wall proceeded to a jury trial. After the jury had begun its deliberations, the district judge contacted counsel and expressed concern about the verdict form that had been provided to the jury. Over the objections of counsel, the judge called the jury back to court and read to them a new verdict form and accompanying instruction. The jury returned to its deliberations and thereafter found Wall guilty of first degree murder and the use of a firearm in the commission of a crime, but the jury acquitted Wall on the charge of conspiracy to commit first degree murder.

Following sentencing, Wall timely filed a notice of appeal. The sole issue raised on appeal is whether the district court erred by providing a substitute verdict form and instruction to the jury during the jury's deliberations.

## II.

## DISCUSSION

A trial court presiding over a criminal case must instruct the jury on all matters of law necessary for the jury's information, and the appellate court exercises free review over whether a jury was given proper instructions. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009) (citing Idaho Code § 19-2132 and *Miller v. State*, 135 Idaho 261, 265, 16 P.3d 937, 941 (Ct. App. 2000)).

Here, Wall does not assert that any of the substantive instructions given to the jury were improper or defective.[1] Rather, Wall contends only that the district court's act of providing a substitute verdict form to the jury over counsel's objections, after the deliberations had begun, and the form itself, were improper.

Our determination of the issue raised in this appeal entails consideration of the statutes relating to the charge against Wall. Murder is defined in I.C. § 18-4001 in the following terms:

---

[1]     The district court used the Idaho Criminal Jury Instructions (ICJI) as patterns for the instructions to the jury. As was noted by this Court in *State v. Ruel*, 141 Idaho 600, 602, 114 P.3d 158, 160 (Ct. App. 2005):

> The pattern ICJI instructions are presumptively correct. The Idaho Supreme Court approved the pattern jury instructions and has recommended that the trial courts use the instructions unless a different instruction would more adequately, accurately, or clearly state the law.

Murder is the unlawful killing of a human being including, but not limited to, a human embryo or fetus, with malice aforethought or the intentional application of torture to a human being, which results in the death of a human being. Torture is the intentional infliction of extreme and prolonged pain with the intent to cause suffering. It shall also be torture to inflict on a human being extreme and prolonged acts of brutality irrespective of proof of intent to cause suffering. The death of a human being caused by such torture is murder irrespective of proof of specific intent to kill; torture causing death shall be deemed the equivalent of intent to kill.

In Idaho the difference between first degree murder and murder in the second degree depends upon circumstances associated with the commission of a murder. Idaho Code § 18-4003 provides the bases for the classification of the two kinds of murder. These bases are set forth below.[2] Notably, subsections (a) through (f) set forth the special circumstances that qualify a killing of a human being for murder in the first degree, and subsection (g) specifies that "all other kinds of murders are of the second degree." Idaho Code § 18-4004 provides that every

---

[2]    Idaho Code § 18-4003.  Degrees of murder.

(a) All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination, or which is perpetrated by any kind of willful, deliberate and premeditated killing is murder of the first degree.

(b) Any murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder of the first degree.

(c) Any murder committed by a person under a sentence for murder of the first or second degree, including such persons on parole or probation from such sentence, shall be murder of the first degree.

(d) Any murder committed in the perpetration of, or attempt to perpetrate, aggravated battery on a child under twelve (12) years of age, arson, rape, robbery, burglary, kidnapping or mayhem, or an act of terrorism, as defined in section 18-8102, Idaho Code, or the use of a weapon of mass destruction, biological weapon or chemical weapon, is murder of the first degree.

(e) Any murder committed by a person incarcerated in a penal institution upon a person employed by the penal institution, another inmate of the penal institution or a visitor to the penal institution shall be murder of the first degree.

(f) Any murder committed by a person while escaping or attempting to escape from a penal institution is murder of the first degree.

(g) All other kinds of murder are of the second degree.

4

person guilty of murder in the first degree is punishable by death or by imprisonment for life, with a ten-year minimum period of confinement during which the offender cannot be eligible for parole, discharge, credit or reduction of sentence, except for "meritorious service." The same code section further provides that every person guilty of murder in the second degree is punishable by a term of imprisonment not less than ten years and the imprisonment may extend to life.

The effect of this statutory process is that a murder may be elevated to the category which is punishable as a first degree murder through the existence of particular circumstances specified in I.C. § 18-4003(a) through (f), which are to be alleged and proved by the State, but if not so elevated, then the murder is punishable as a murder in the second degree, I.C. § 18-4003(g) and I.C. § 18-4004.

Wall was charged with committing the murder of Street as a "willful, deliberate and premeditated killing" in violation of I.C. § 18-4003(a). The jury was also instructed on the lesser offenses of second degree murder, voluntary manslaughter, and involuntary manslaughter. Under Idaho law, when a lesser included offense is submitted to the jury, the jury must be instructed that it may not consider the lesser offense unless it has first considered each of the greater offenses and acquitted the defendant of such greater offenses. I.C. § 19-2132.

Among the instructions given to the jury, was an instruction based upon the statutory definition of murder, I.C. §18-4001. This instruction, No. 18, informed the jury that murder was the killing of a human being without legal justification or excuse and with malice aforethought.[3] Utilizing ICJI 704, tailored to the charge against Wall, the district court also gave the jury instruction No. 17, which recited that:

> In order for the defendant to be guilty of Murder, the state must prove each of the following:
> 1. On or about May 2, 2003
> 2. in the state of Idaho
> 3. the defendant Robroy Wall, Jr. engaged in conduct which caused the death of Zachariah Street
> 4. the defendant acted without justification or excuse and
> 5. with malice aforethought.

---

[3] Although the statute, I.C. §18-4001, also includes death by intentional torture within the definition of murder, that cause was not alleged in the charge against Wall and therefore was not made a part of instruction No. 18.

If you find that the state has failed to prove any of the above, then you must find the defendant not guilty of murder. If you find that all of the above have been proven beyond a reasonable doubt then you must find the defendant guilty of murder and decide if the defendant is guilty of first degree murder.

Because Wall was charged with committing murder in the first degree, the district court also gave the jury an instruction concerning that specific charge, based on I.C. § 18-4003(a) and utilizing ICJI 705. This instruction, No. 20, recited:

In order for the defendant to be guilty of First Degree Murder, the state must prove that the murder:

was a willful, deliberate, and premeditated killing. Premeditation means to consider beforehand whether to kill or not to kill, and then to decide to kill. There does not have to be any appreciable period of time during which the decision to kill was considered, as long as it was reflected upon before the decision was made. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not premeditation.

If you unanimously agree that the state has proven the above special circumstance beyond a reasonable doubt, then you must find the defendant guilty of first degree murder. If you unanimously agree that the special circumstance has not been proven beyond a reasonable doubt, you must find the defendant guilty of second degree murder.

All other murder is murder of the second degree.

Considered together, instruction Nos. 17 and 20 informed the jury that it first must determine whether a murder occurred and whether Wall committed the alleged murder. If so, then the jury was next to determine whether the State proved it was a murder in the first degree. If the murder was a willful, deliberate and premeditated killing, i.e., first degree murder, then the jury was to find Wall guilty of first degree murder. If the State proved that Wall committed the murder, but failed to prove that it was first degree murder, i.e., the State did not prove beyond a reasonable doubt that the killing was willful, deliberate and premeditated as alleged by the State, then the jury was instructed to find Wall guilty of second degree murder.

The verdict form initially submitted by the district court to the jury reflected the foregoing instructions. This form instructed the jury to first determine whether the State had proved Street's killing was murder and to render a verdict on that question, finding Wall either guilty or not guilty. If the jury found Wall not guilty of murder, then the jury was to proceed to determine whether Wall was guilty or not guilty of one of the lesser included offenses of voluntary and

6

involuntary manslaughter, and then whether he had used a firearm in the commission of a crime and, finally, whether he was guilty or not guilty of conspiracy to commit first degree murder. If the jury found Wall guilty of murder, then the jury was to proceed to consider whether Wall was guilty or not guilty of first degree murder. If the jury found Wall guilty of first degree murder, then the jury was to proceed to the inquiries of whether he had used a firearm in the commission of a crime and whether he was guilty or not guilty of a conspiracy to commit first degree murder. Likewise, if the jury found Wall not guilty of first degree murder, the jury was to proceed to the questions of whether Wall had used a firearm in the commission of a crime and whether he was guilty or not guilty of conspiracy to commit first degree murder. This verdict form was accompanied by an instruction, No. 40, that explained to the jury the steps, as set forth above, to be taken to answer the questions on the verdict form.

About eleven hours after the jury had begun its deliberations, the district court called counsel for the parties and advised them that she had decided there was error in the verdict instruction. She informed counsel that she had concluded that if the jury first found Wall guilty or not guilty of murder, it would constitute a determination of the lesser offense of second degree murder before the jury considered the charged offense of first degree murder, which would be contrary to the directive of I.C. § 19-2132. The district court explained:

> I've been meeting with counsel in my chambers this morning, because I was concerned that the jury verdict and the jury verdict instruction was incorrect. Because in my opinion, it put the lesser included offense of murder as the first decision for the jury to make, where the first question that the jury should answer is whether or not the defendant is guilty of first degree murder.
>
> . . . .
>
> The court's concern, which is what I expressed to counsel in chambers, is that if the jury comes back, finds -- should, for example, the jury find the defendant guilty of second degree murder, and then they're deadlocked on first-degree. If that scenario happens, then what does the court do? Is the state entitled to a mistrial, entitled to a -- because the jurors were deadlocked on the crime that was charged? They don't get to the lesser included offenses until they make a decision on the crime charged. So this has to be my decision.

The district court, over objection of both parties, prepared a new verdict form that placed before the jury the initial question of whether Wall was guilty or not guilty of first degree murder. The form provided that if the jury determined that Wall was guilty of first degree murder, then the

7

jury was to proceed to determine whether Wall used a firearm in the commission of a crime and whether Wall was guilty or not guilty of conspiracy to commit first degree murder. The form provided that if the jury determined that Wall was not guilty of first degree murder, then the jury was next to determine whether Wall was guilty or not guilty of second degree murder. If the jury determined that Wall was guilty of second degree murder, then the next questions for the jury were whether Wall used a firearm in the commission of a crime and whether Wall was guilty or not guilty of conspiracy to commit first degree murder. If Wall was found not guilty of second degree murder, then the jury was to determine whether he was guilty or not guilty of the lesser, included offenses of voluntary and involuntary manslaughter. This verdict form was accompanied by a new instruction No. 40 that explained to the jury the steps to follow in answering the questions on the new verdict form, similarly as had been done with the original verdict form and the original instruction No. 40.

On appeal, Wall argues that by withdrawing the initial verdict form and substituting the new verdict form, the district court committed reversible error by essentially directing a verdict in favor of the State on the offense of murder and allowed the jury to find Wall guilty of first degree murder without ever having found him guilty of murder, aside from special circumstances attendant to the killing. He also asserts that it was error to provide the new verdict form over the objections of both parties after closing arguments that were based on the original verdict form, which was consistent with the instructions setting forth the elements of the offense. Finally, he asserts that the action of the district court, in providing the new verdict form after the jury had been in deliberation for over eleven hours, suggests that it acted as a prohibited dynamite instruction because the jury rendered its verdict shortly thereafter.

We are not persuaded by Wall's arguments. The new verdict form submitted to the jury by the district court did not change the direction that the jury had received by instruction No. 17, quoted above, concerning the elements of murder that had to be proved before the jury could find Wall guilty of first degree murder. While the initial verdict form explicitly gave the jury the responsibility of determining murder guilt preliminarily before considering whether the murder was one in the first degree, the new verdict form essentially combined the two inquiries into one, because the jury could not find Wall guilty of first degree murder without also agreeing unanimously that he was guilty of murdering Street as set forth in the elements contained in instruction No. 17. We thus do not find the new verdict form to be inconsistent with the other

8

instructions to the jury. In light of the elements of instruction No. 17, the new verdict form was not tantamount to a directed verdict.

We also do not conclude that the timing of the submission of the new form to the jury establishes that it served as a prohibited dynamite instruction. There is nothing in the record to indicate that the jury had reached an impasse in its deliberations or had advised the court that it was unable to reach a verdict. It is equally plausible that by the time the court provided the new verdict form to the jury, the jury had already determined guilt on the question of murder and was proceeding with the inquiries concerning the use of a firearm and whether Wall was guilty or not of conspiring to commit first degree murder.

## III.

## CONCLUSION

The district court did not commit reversible error by submitting to the jury a new verdict form during the jury's deliberations. The judgment of conviction and sentence are affirmed.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**

9